**Opinion filed October 29, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00325-CR
_____

### ISRAEL JOE IBARRA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**

**Haskell County, Texas**

**Trial Court Cause No. 6680**

### O P I N I O N

The jury convicted Israel Joe Ibarra of possession of more than four grams but less than 200 grams of methamphetamine with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). The trial court assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of sixty years. Appellant challenges his conviction in three issues. We affirm.

*Background Facts*

Haskell County Sheriff Winston Stephens[1] testified at both the suppression hearing and during trial that he received information from his predecessor, Sheriff David Halliburton, that a confidential informant told Sheriff Halliburton that Jason Mendez was dealing drugs in Haskell County. In response to Sheriff Halliburton's report, Sheriff Stephens set up surveillance on Mendez's house for approximately a month. Sheriff Stephens then received information from his own confidential informant that Mendez was dealing drugs. Sheriff Stephens testified that he had known his confidential informant for approximately twelve years. The confidential informant had given Sheriff Stephens reliable information related to criminal activity in the past. Sheriff Stephens also testified that the confidential informant had never given him information that was not reliable.

At Sheriff Stephens's request, the confidential informant attempted to buy drugs from Mendez on December 27, 2012, but Mendez was out of drugs that day. The confidential informant told Sheriff Stephens that Mendez would be going to Abilene that evening to "re-up his dope." The confidential informant said that Mendez would be traveling northbound in a silver car with a Dallas Cowboys star on the back windshield.

Sheriff Stephens observed Mendez leaving for Abilene at the time that the confidential informant told him that Mendez would be leaving Haskell. Sheriff Stephens attempted to intercept Mendez on his return to Haskell on December 27, but he missed seeing Mendez's vehicle return that evening. Sheriff Stephens testified that the confidential informant told him that Mendez would be leaving for Abilene to purchase more drugs the next evening (December 28) and would return to Haskell between 9:00 p.m. and 9:30 p.m. The

---

[1]Sheriff Stephens was the chief deputy at the time of the incident.

confidential informant also told Sheriff Stephens that Santana Guzman would be in the vehicle with Mendez.

On the evening of December 28, Sheriff Stephens saw a silver Oldsmobile with a star on the back driving toward Haskell. Sheriff Stephens started driving behind the car. A check of the vehicle's registration information indicated that the car belonged to Mendez's brother. Sheriff Stephens activated his emergency lights and pulled the car over. Mendez was driving, Guzman was in the front passenger seat, Essie Alvarez was in the backseat behind the driver, and Appellant was in the backseat behind Guzman. Sheriff Stephens instructed Mendez to exit the vehicle and asked for his driver's license. Mendez replied that he did not have his license. Sheriff Stephens asked for permission to search the vehicle and Mendez consented. All of the occupants then exited the vehicle.

Sheriff Stephens, along with another officer, searched the vehicle. Sheriff Stephens testified that the car smelled of burnt marihuana. Inside the vehicle, the officers found an open box that contained a small amount of marihuana, two marihuana pipes with marihuana residue, and rolling papers. They also found digital scales on the front floorboard. The officers found, on the front driver's side above the door, a small scooper that is used to bag drugs.

Sheriff Stephens spoke with Guzman separately from the group. Guzman admitted that she had contraband on her person and retrieved a small bag from inside her pants. Inside the bag were several baggies, a small blue flashlight, and a small container of marihuana. Inside the baggies was an off-white, crystal-type substance. This substance was later tested and determined to be a total of 1.01 grams of methamphetamine.

All of the occupants were arrested for drug possession. Appellant did not have any identification on him, and he gave a false name when he was arrested. The car was impounded and searched again the next day. In the subsequent search,

3

Sheriff Stephens found a small, soft-sided bag wedged between the backseat and the body of the vehicle on the driver's side. Sheriff Stephens also found another portion of a marihuana clip. Inside the soft-sided bag were Ziploc baggies that contained more off-white, crystal-type substance. The contents were tested and determined to be a total of 3.09 grams of methamphetamine.

*Analysis*

We first address Appellant's sufficiency issues. Appellant challenges the sufficiency of the evidence in his second and third issues. We review sufficiency of the evidence issues under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

In his second issue, Appellant asserts that the evidence was insufficient to support his conviction for possession with intent to deliver any of the methamphetamine. He contends that the State only showed that he was in close proximity to the drugs because they were located in a car in which he was a passenger. He also asserts that only an accomplice witness testified that he knew about the methamphetamine and its purpose. In this regard, Appellant contends that the accomplice's testimony was not corroborated by any independent evidence. In his third issue, Appellant contends that the evidence was insufficient to prove the amount of methamphetamine for which he was convicted. Appellant challenges the amount the State linked him to and argues that the evidence proven by the State amounts to less than four grams. Specifically, he asserts that there is insufficient evidence linking him to the methamphetamine recovered from Guzman's pants.

When, as in this case, the jury's verdict could have been based on the testimony of an accomplice, the sufficiency review must incorporate the accomplice witness rule stated in Article 38.14 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). In order to support a conviction based upon the testimony of an accomplice, there must be corroborating evidence that tends to connect the accused with the offense. *Id.*; *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). In reviewing the sufficiency of the corroborating evidence, we eliminate the accomplice testimony from consideration and focus on the remaining portions of the record to determine whether there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). The corroborating evidence may be direct or circumstantial and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon*, 49 S.W.3d at 361; *Gosch v. State*,

5

829 S.W.2d 775, 777 (Tex. Crim. App. 1991). We review the corroborating evidence in the light most favorable to the verdict. *Taylor v. State*, 328 S.W.3d 574, 578 (Tex. App.—Eastland 2010, pet. ref'd). Once corroborated, testimony of an accomplice may be considered by the jury in the same manner as any other competent evidence. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

Non-accomplice testimony was introduced showing that Appellant was in the back passenger seat near the location of the methamphetamine, that the car smelled of burnt marihuana, that marihuana was in plain view in the vehicle, that digital scales and rolling papers were also found in plain view, that the vehicle matched the description given to Sheriff Stephens by the confidential informant, and that the confidential informant told Sheriff Stephens that the driver of the vehicle was bringing drugs back from Abilene. In this case, the jury could have rationally found that the corroborating evidence tended to connect Appellant to the possession of the methamphetamine. *Malone*, 253 S.W.3d at 258–59; *Woodruff v. State*, No. 11-09-00171-CR, 2011 WL 2671926, at *2 (Tex. App.—Eastland July 7, 2011, no pet.) (mem. op., not designated for publication). Therefore, we consider the accomplice witness testimony in conducting our review of the sufficiency of the evidence.

In cases involving unlawful possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew that the matter possessed was contraband. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Martin v. State*, 753 S.W.2d 384 (Tex. Crim. App. 1988). When the accused is not shown to have had exclusive possession of the place where the contraband was found, the evidence must link the accused to the contraband and establish that the accused's connection with the drug was more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Pollan v. State*, 612 S.W.2d 594 (Tex. Crim. App. [Panel

6

Op.] 1981). Alvarez, an accomplice, testified that Appellant handed her a small bag that contained a portion of the methamphetamine and told her to "get rid of it." Alvarez then stuffed the bag behind her in the backseat of the vehicle. From this evidence, the jury could have determined beyond a reasonable doubt that Appellant exercised care, custody, control, or management over the methamphetamine found in the bag that Alvarez stuffed behind her in the backseat of the vehicle and that he knew the substance was contraband. *See Woodruff*, 2011 WL 2671926, at *2.

We next address the methamphetamine found on Guzman. We consider several non-exclusive factors when determining whether there are affirmative links between the accused and the controlled substance: (1) the accused's presence when the search was executed; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of a controlled substance when he was arrested; (5) whether the accused possessed other contraband when he was arrested; (6) whether the accused made incriminating statements; (7) whether the accused attempted to flee; (8) whether he made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12.

Guzman admitted that she had contraband on her person and retrieved a small bag from inside her pants. Inside the bag were several baggies, a small blue flashlight, and a small container of marihuana. The back to the flashlight was found in the back floorboard, near where Appellant had been sitting. Furthermore, the

baggies retrieved from Guzman's person were similar in make and size to the baggies recovered from the bag stuffed in the backseat of the vehicle.

Intent to deliver may be proven by circumstantial evidence. Courts have considered several factors in determining intent, including the quantity of drugs the defendant possessed, the manner of packaging of the drugs, and the presence or absence of drug paraphernalia for use or sale. *See Brown v. State*, 243 S.W.3d 141, 149–50 (Tex. App.—Eastland 2007, pet. ref'd); *Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.). Here, Appellant was present when the drugs were found on Guzman, the packaging of the drugs found in the backseat was similar to the drugs found on Guzman, and there were baggies and scales in the car (which are indicative of intent to deliver). From this evidence, the jury could have determined beyond a reasonable doubt that Appellant exercised care, custody, control, or management over the methamphetamine found on Guzman's person and that he knew the substance was contraband.

In considering the factors listed above, we find that the evidence shows that Appellant was present when the search was executed, that he was in close proximity to and had access to the methamphetamine, that the place in which the drugs were found was enclosed, and that Appellant gave a false name when he was arrested. *See Felder v. State*, 848 S.W.2d 85, 98 (Tex. Crim. App. 1992) (giving false identification to a police officer indicates a consciousness of guilt). The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. CRIM. PROC. art. 36.13 (West 2007), 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). In addition, the jury was entitled to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319. We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a

reasonable doubt that Appellant intentionally or knowingly possessed methamphetamine in an amount of more than four grams. We overrule Appellant's second and third issues.

In his first issue, Appellant argues that the trial court erred when it denied his motion to suppress. Specifically, Appellant challenges Sheriff Stephens's basis for initiating the traffic stop. He contends that the warrantless stop and subsequent search of the vehicle was not based on reasonable suspicion because the "confidential informant's information which led to the stop and search was not reliable." Appellant also contends that Sheriff Stephens did not testify as to any details that support the informant's information that Mendez was "dealing drugs."

A trial court's denial of a motion to suppress is reviewed for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review a trial court's ruling under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Almost complete deference is given to its determination of historical facts, especially if those facts are based on an assessment of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Amador*, 221 S.W.3d at 673 (citing *Guzman*, 955 S.W.2d at 89). We review de novo a trial court's application of the law to the facts. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Regardless of whether the trial court granted or denied the motion, appellate courts view the evidence in the light most favorable to the ruling. *Wade*, 422 S.W.3d at 666; *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). We will uphold the trial court's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case. *Wade*, 422 S.W.3d at 667; *Valtierra*, 310 S.W.3d at 447–48. When the trial court does not issue findings of fact, we imply

9

findings that support the trial court's ruling if the evidence supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006).

There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited duration and scope, which must be supported by reasonable suspicion of criminal activity; and (3) arrests that are reasonable only if supported by probable cause. *Wade*, 422 S.W.3d at 667; *Woodard*, 341 S.W.3d at 410–11 (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968); *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975)). A detention occurs when a reasonable person, taking into account all circumstances, feels they are not at liberty to ignore the police and go about their business. *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (quoting *Bostick*, 501 U.S. at 437). There is no dispute that Sheriff Stephens conducted an investigative detention for purposes of the Fourth Amendment when he stopped Mendez's car.

A police officer may briefly detain a person to investigate possible criminal activity, even if there is no probable cause, if the officer has reasonable suspicion to believe there is possible criminal activity. *Terry*, 392 U.S. at 22; *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The stop must be justified, and the scope must be reasonably related to the circumstances justifying the stop. *Terry*, 392 U.S. at 20. A police officer has reasonable suspicion if he has specific, articulable facts that, when combined with their rational inferences, would lead the officer to reasonably conclude that a person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that ignores the subjective intent of the officer and looks at whether there is an objective reason for the detention. *Wade*, 422 S.W.3d at 668. Courts determine reasonable suspicion under the totality of the circumstances. *Id.* Individual circumstances may seem innocent enough in isolation, but if the circumstances combine to reasonably suggest

10

the imminence of criminal conduct, an investigative detention is justified. *Id.*; *Ford*, 158 S.W.3d at 492.

Appellant argues that Sheriff Stephens lacked reasonable suspicion when he stopped the vehicle. In this regard, Sheriff Stephens testified that he relied solely on the information provided by his confidential informant in making the decision to stop the vehicle rather than observing any traffic violations. Appellant contends that the totality of the circumstances did not rise to a level of reasonable suspicion based on the confidential informant's report and Sheriff Stephens's independent observations. We disagree.

Sheriff Stephens testified that he acted in response to his confidential informant's information about Mendez trafficking drugs. As noted previously, the identity of the confidential informant was known to Sheriff Stephens. Sheriff Stephens testified that he had known the informant for approximately twelve years, that he had given Sheriff Stephens reliable information related to criminal activity in the past, and that he had never given him information that was not reliable.

In situations involving the police's use of an informant, we consider the informant's reliability in analyzing the totality of the circumstances. *Smith v. State*, 58 S.W.3d 784, 789 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability." *Id.* at 790. Although an unverified tip might not provide enough support to justify an arrest or the issuance of a warrant, it will be sufficient to justify an investigative stop if it is made by a known informant who has provided information in the past. *Adams v. Williams*, 407 U.S. 143, 146–47 (1972) (explaining that information obtained from an informant who has been used before is stronger than an anonymous tip).

11

The confidential informant contacted Sheriff Stephens and told him that Mendez was dealing drugs from his Mendez's mother's residence. Sheriff Stephens witnessed several vehicles come and go from the residence, and he testified that the behavior was consistent with "what a normal drug house would be." Additionally, Sheriff Stephens had worked with the confidential informant in the past several years, and the confidential informant's information had proven reliable in the past. This testimony from Sheriff Stephens established the confidential informant's reliability.

Furthermore, the confidential informant provided Sheriff Stephens with information about Mendez leaving for Abilene to purchase more drugs the next evening and returning around 9:30 p.m. The confidential informant told Sheriff Stephens that Mendez would be traveling northbound in a silver car. Sheriff Stephens stopped Mendez in a silver car, traveling northbound from Abilene, around 9:30 p.m. This testimony served to corroborate the veracity of the informant's information. Mendez arrived in the vehicle described by the informant, at the time and place provided by the informant. Corroboration does not mean that Sheriff Stephens must personally observe the conduct that caused him to reasonably suspect that a crime is being, has been, or is about to be committed. *Brother v. State*, 166 S.W.3d 255, 259 n.5 (Tex. Crim. App. 2005) (citing *Adams*, 407 U.S. at 147). "Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* (citing *Alabama v. White*, 496 U.S. 325, 330–31 (1990)).

Based on the totality of the circumstances, we find that Sheriff Stephens had reasonable suspicion to initiate the traffic stop of the vehicle. In light of the testimony presented during the suppression hearing, which indicated that the confidential informant had a track record of providing reliable information in the

12

past, as well as the details of Mendez's conduct that Sheriff Stephens corroborated, we cannot conclude that the trial court abused its discretion by denying Appellant's motion to suppress. *See Smith*, 58 S.W.3d at 790 (explaining that testimony regarding confidential informant's "track record" for "providing credible information in the past" can provide additional facts needed to establish reasonable suspicion through confidential informant's tip); *see also Adams*, 407 U.S. at 144–47 (determining that sufficient indicia of reliability were present when officer knew informant and when informant had previously given officer reliable information). We overrule Appellant's first issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


October 29, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.