

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00308-CR

PAMELA SUE WOLFE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY
TRIAL COURT NO. CR17723

----------

## MEMORANDUM OPINION[1]

Appellant Pamela Sue Wolfe pled guilty to one count of possessing with intent to deliver more than four but less than 200 grams of a controlled substance (methamphetamine), a first-degree felony, *see* Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2017), § 481.112(a), (d) (West 2017), in exchange for the State's recommendation that she be placed on deferred adjudication community supervision for four years and pay a $1,000 fine and restitution of

---

[1]*See* Tex. R. App. P. 47.4.

$180.  The trial court followed the bargain.  Appellant preserved her right to challenge on appeal the trial court's denial of her pretrial motion to suppress, and she does so in three issues.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  Wise County Sheriff's Office Sergeants Stopped Appellant After Receiving a Tip, Corroborating It, and Seeing Her Commit a Traffic Violation.**

A confidential informant (CI) with whom Sergeant Chad Lanier of the Wise County Sheriff's Office had worked in the past and found reliable told the sergeant that Appellant had been getting methamphetamine in Dallas, transporting it back to Wise County, and selling it in smaller, repackaged quantities out of her Wise County home.  About a month after he received the tip, Sergeant Lanier followed Appellant from Wise County to Dallas, where she

- parked;

- entered a building;

- stayed about forty-five minutes;

- returned to her car;

- moved to another parking lot behind the building; and

- stayed about fifteen minutes before driving back toward Wise County.

Still following Appellant as she returned to Wise County from Dallas, Sergeant Lanier saw her commit two minor traffic violations after she crossed the Wise County line.  Sergeant Calvin Riggs of the Wise County Sheriff's Office stopped

2

Appellant after Sergeant Lanier notified dispatch to have a nearby marked unit initiate a traffic stop.

After requesting a K-9 unit, Sergeant Lanier joined Sergeant Riggs and Appellant at the location of the stop. Appellant hurriedly exited her vehicle and locked its doors, leaving her keys in the ignition and the engine and air conditioner running. She denied Sergeant Lanier permission to enter her vehicle, and he told her that a K-9 unit was already on the way to the scene. Appellant then became very nervous. When the K-9 unit arrived about twenty minutes later, the dog alerted on the rear door of the driver's side of Appellant's vehicle. The sergeants searched the vehicle without first getting a warrant and found a container holding two bags of methamphetamine weighing twenty-two grams, large plastic bags containing dozens of smaller plastic bags, and notebooks detailing drug transactions. The sergeants then arrested Appellant.

## B.    The Trial Court Denied Appellant's Motion to Suppress.

Appellant filed a motion to suppress all evidence seized on the grounds that the detention, arrest, search, and seizure violated the Fourth and Fourteenth Amendments to the United States Constitution, article 1, section 9 of the Texas Constitution, and article 18.01 of the code of criminal procedure. She asserted in her motion that:

- No reasonable suspicion justified the stop;

- No probable cause or other law justified prolonging the stop;

- Her warrantless arrest was not based on probable cause and an exception to the warrant requirement; and

- Any evidence was seized illegally because its seizure was "incident to an illegal detention, search, and arrest."

At the trial court's request, the State filed a response to Appellant's motion to suppress. The State contended that:

- A reliable CI provided reasonable suspicion for the stop;

- The pretextual stop based on traffic violations was not unconstitutional;

- The detention was not unreasonably or illegally prolonged;

- The K-9 search did not violate the Fourth Amendment; and

- The dog's alert on the car gave the officer probable cause to search the car without first obtaining a warrant.

The trial court did not conduct a hearing and instead based its order denying Appellant's motion to suppress on the motion and response.[2] *See* Tex. Code Crim. Proc. Ann. art. 28.01, § 1(6) (West 2006) (allowing the trial court to base its ruling on the motion itself); *Ford v. State*, 305 S.W.3d 530, 539 (Tex. Crim. App. 2009) ("The legislature suggested, but did not require, several different methods to determine the merits of a motion to suppress, including information and facts set out in the motion itself, affidavits, or oral testimony.").

---

[2]Appellant filed an amended motion to suppress several months after the trial court's denial of her original motion but did not obtain a ruling.

4

**C.    The Trial Court  Issued Findings of Fact and Conclusions of Law During the Pendency of This Appeal.**

Several months after the denial of her motion to suppress, Appellant filed a request for findings of fact and conclusions of law to support the trial court's ruling.  As Appellant points out in her brief, the trial court did not issue findings of fact and conclusions of law before briefing in this case.  We therefore abated the appeal to allow the trial court to prepare and file findings of fact and conclusions of law, and those findings of fact and conclusions of law were filed in this court on April 24, 2017, before the case was submitted on June 13, 2017.  Neither party requested to file a supplemental or amended brief.

The trial court issued the following findings of fact:

1.    On April 25, 2013, Sergeant Chad Lanier of the Wise County Sheriff's Office was contacted by a [CI].

2.    Said CI worked with Sergeant Lanier in the past.

3.    Said CI's previous tips had resulted in the arrest of wanted suspects, recovery of stolen property, and the filing of six felony cases.

4.    Sergeant Lanier considered this CI a reliable source of information.

5.    CI advised Sergeant Lanier that [Appellant] was planning to transport drugs from Dallas to Wise County.

6.    CI provided [Appellant's] name and address.

7.    CI provided the year, make, model, and license plate number of [Appellant's] vehicle.

8.    CI told Lanier that [Appellant] would be using said vehicle to transport between one-half and one ounce of methamphetamine from Dallas to Wise County.

9.   CI told Lanier that [Appellant] was known to obtain methamphetamine in Dallas, repackage the methamphetamine in smaller quantities, and then sell it from her residence in Wise County.

10.   Based upon the CI's information, Sergeant Lanier began surveilling [Appellant].

11.   On May 22, 2013, Lanier saw [Appellant] driving the same vehicle the CI had previously identified. Defendant was driving toward Dallas.

12.   Lanier followed [Appellant] to Dallas. [Appellant] parked in a parking lot at a building.

13.   [Appellant] went into the building and remained there for approximately forty-five minutes.

14.   [Appellant] exited the building, pulled into the back parking lot of the building, and stayed for fifteen more minutes.

15.   [Appellant] drove her vehicle back to Wise County.

16.   After [Appellant] crossed the Wise County Line, Lanier observed [her] driving four miles per hour over the posted speed limit.

17.   Lanier also observed [Appellant] fail to signal a lane change.

18.   Lanier contacted dispatch and requested that a nearby marked unit initiate a traffic stop of [Appellant's] vehicle.

19.   Lanier also requested a K-9 unit.

20.   Sergeant Riggs of the Wise County Sheriff's Office responded to the dispatch.

21.   Riggs stopped [Appellant's] vehicle. Lanier joined Riggs and [Appellant] at the roadside.

22.   As Lanier approached the driver's side of [Appellant's] vehicle, [Appellant] exited quickly. [She] locked the doors, leaving her keys in the ignition and the engine and air conditioning running.

23.   Lanier asked for permission to search the vehicle.

24.   [Appellant] denied consent to search.

25. Lanier told [Appellant] that a K-9 unit was en route to the scene to conduct an open-air sniff of the vehicle.

26. [Appellant] became very nervous upon hearing that . . . Lanier called a K-9 unit.

27. The K-9 unit arrived approximately 20 minutes later.

28. During the K-9 open-air sniff, the dog alerted on the driver's side rear door.

29. The officers on scene entered the vehicle.

30. During a search of the vehicle, officers found a glass pipe used for smoking methamphetamine in [Appellant's] purse. Officers also found large plastic bags containing dozens of smaller plastic bags, a container with two bags of methamphetamine weighing twenty-two grams, and notebooks detailing drug sale transactions.

31. Officers arrested Defendant.

The trial court issued the following conclusions of law:

1. It was reasonable for Sergeant Lanier to rely on the information provided by the CI.

2. Sergeant Lanier independently corroborated information provided by the CI.

3. Lanier had reasonable suspicion to stop [Appellant] for possession of methamphetamine based on the information provided by the CI and Lanier's corroboration of the information.

4. Officers had reasonable suspicion to stop [Appellant's] vehicle for speeding.

5. Officers had reasonable suspicion to stop [Appellant's] vehicle for failure to signal a lane change.

6. Lanier had reasonable suspicion to prolong [Appellant's] detention so that a K-9 could conduct a sniff on [her] car.

7. The length of the detention was reasonable.

7

8. Once the K-9 alerted on [Appellant's] vehicle, officers had probable cause to search [her] vehicle and its contents for evidence of drugs.

9. Officers had probable cause to arrest [Appellant].

## II. APPELLANT'S ISSUES

In three issues, Appellant contends that the trial court erred by denying her motion to suppress because the CI's information was not reliable, no traffic violation provided reasonable suspicion for the stop, and the investigative detention and eventual search exceeded the scope of the initial stop.

## III. DISCUSSION

### A. We Review Rulings on Motions to Suppress in a Bifurcated Manner.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v.*

8

*State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**B.**   **The State Must Establish That a Warrantless Search or Seizure of Property or a Person Was Reasonable.**

The Fourth Amendment protects against unreasonable searches and seizures by government officials.   U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009).   A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672.  Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.  *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

9

**C.** **The Initial Detention of Appellant Based on a Traffic Violation Was Lawful.**[3]

Appellant argues in her second issue that "no visible traffic violation" generated reasonable suspicion or probable cause for the stop and that it was therefore unlawful.

**1.** **Reasonable Suspicion That a Person Is Violating the Law Justifies a Detention.**

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the

---

[3]We recognize that only one valid basis of reasonable suspicion is necessary to the resolution of the appeal, and thus we are not required to address both of Appellant's first two issues. *See* Tex. R. App. 47.1. However, we choose to do so to facilitate our resolution of her third issue.

10

officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

### 2. Speeding Is a Traffic Violation.

It is a traffic offense for someone to "drive at a speed greater than is reasonable and prudent under the circumstances." Tex. Transp. Code Ann. § 545.351(a) (West 2011). A person's driving faster than the prescribed speed limit is prima facie evidence that she is speeding, a traffic violation. *Id.* § 545.352 (West Supp. 2017); *Infante v. State*, 397 S.W.3d 731, 735 (Tex. App.—San Antonio 2013, no pet.).

### 3. Seeing a Person Commit a Traffic Violation Gives Law Enforcement Probable Cause to Detain.

Law enforcement personnel have probable cause to stop a person when they see that person commit a traffic violation. *State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005); *see Dillard v. State*, 550 S.W.2d 45, 53 (Tex. Crim. App. 1977) (holding that seeing Dillard speeding gave police probable cause to stop). Because reasonable suspicion is a lesser standard than probable cause, an officer who has probable cause to detain a suspect necessarily has reasonable suspicion to do so. *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.).

### 4. Seeing Appellant Speed Gave Sergeant Lanier Probable Cause to Detain Her.

Based on the State's response to Appellant's motion to suppress, the trial court found that Sergeant Lanier saw Appellant drive four miles per hour over the

11

posted speed limit. That the police also stopped Appellant for the larger purpose of investigating her for possessing and transporting drugs does not invalidate the detention based on her speeding violation. *See Gray*, 158 S.W.3d at 469–70. We consequently hold that probable cause (and therefore reasonable suspicion) supported the initial stop of Appellant, and we do not address whether the police had reasonable suspicion to stop her for the other traffic violation. *See* Tex. R. App. P. 47.1. We overrule Appellant's second issue.

**D. The Initial Detention of Appellant Based on Sergeant Lanier's Belief That She Possessed Drugs Was Also Lawful.**

Appellant was stopped after Sergeant Lanier observed her commit traffic violations, but she was also stopped because he suspected she was transporting methamphetamine from Dallas to Wise County and would therefore have it in her vehicle. In her first issue, Appellant contends that the CI's tip was unreliable and therefore that reasonable suspicion did not support the stop.

**1. A CI's Tip Can Provide Reasonable Suspicion.**

A CI's tip can provide reasonable suspicion if it is sufficiently reliable. *See Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924 (1972); *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1326 (2014); *Ibarra v. State*, 479 S.W.3d 481, 490 (Tex. App.—Eastland 2015, pet. ref'd). In deciding whether a tip provides reasonable suspicion, we look at factors including:

> the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the

12

information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.

*United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007) (citations and internal quotation marks omitted); *see also Ibarra*, 479 S.W.3d at 491.

## 2. The CI's Tip Coupled with Sergeant Lanier's Observations Provided Reasonable Suspicion for the Stop.

Based on the State's response to Appellant's motion to suppress, the trial court found:

- The CI had contacted Sergeant Lanier on April 25, 2013;

- Sergeant Lanier had relied on the CI in the past in making arrests, recovering stolen property, and filing six felony cases;

- Sergeant Lanier considered the CI reliable;

- The CI told Sergeant Lanier that Appellant was planning to transport drugs from Dallas to Wise County;

- The CI told Sergeant Lanier Appellant's name and address and the year, make, model, and license plate number of her vehicle;

- The CI told Sergeant Lanier that Appellant would be using her car to move up to an ounce of methamphetamine from Dallas to Wise County;

- The CI told Sergeant Lanier that Appellant was known to get methamphetamine in Dallas, break it up into smaller amounts, and then sell it from her Wise County home;

- Based on the tip, Sergeant Lanier began surveilling Appellant;

- Almost a month after he received the tip, Sergeant Lanier saw Appellant driving the described vehicle toward Dallas;

- He followed her to Dallas;

- She parked in a parking lot at a building and went inside;

13

- About forty-five minutes later, she came out of the building;

- She got back in the car and moved to the building's back parking lot, where she stayed for fifteen minutes; and

- She drove back to Wise County.

Appellant argues that the tip was stale, but the tip described continuing behavior, not a one-time occurrence. *See United States v. Craig*, 861 F.2d 818, 822 (5th Cir. 1988) ("[I]f 'the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale.'" (quoting *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir.), *cert. denied*, *Hoskins v. United States*, 469 U.S. 1073 (1984))). In furthering her argument that the tip was unreliable, Appellant also aligns her case with *United States v. Jackson*, a case in which the United States Court of Appeals for the Fifth Circuit held there was no reasonable suspicion for the stop of Jackson in part because the officers' surveillance in that case "undermined the informants' information" and "nullified the tips' reliability." 328 F. App'x. 933, 936–37 (5th Cir. 2009). In the case before us, though, Sergeant Lanier's surveillance of Appellant on the day of her arrest only corroborated the tip; it did nothing to weaken the tip. *See Draper v. United States*, 358 U.S. 307, 312–13, 79 S. Ct. 329, 333 (1959); *Dixon v. State*, 206 S.W.3d 613, 616–17 (Tex. Crim. App. 2006). Based on the totality of the circumstances—the CI's information and history of reliability plus Sergeant Lanier's own observations of Appellant—we hold that reasonable suspicion that

14

Appellant possessed methamphetamine supported the stop. We overrule her first issue.

**E.      Appellant's Continued Detention Through the Dog Alert Was Lawful.**

In her third issue, Appellant complains that the length of her detention and the search of her vehicle exceeded the scope of the initial stop.[4]

**1.      An Investigatory Detention Must Last Only As Long As Necessary.**

An investigatory detention cannot last longer than the police need to complete the purpose of the stop unless further reasonable suspicion comes to light during the stop. *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015); *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (op. on reh'g en banc). Whether the detention is reasonable depends on "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Brigham*, 382 F.3d at 511 (citations and internal quotation marks omitted).

**2.      A Dog Sniff Can Substantiate or Allay Reasonable Suspicion That a Vehicle Contains Drugs.**

As the Texas Court of Criminal Appeals explained in *Matthews v. State*,

One reasonable method of confirming or dispelling the reasonable suspicion that a vehicle contains drugs is to have a trained drug dog perform an "open air" search by walking around the car. If the dog

---

[4]To the extent that Appellant repeats her contention in this issue that no reasonable suspicion justified the stop, we summarily overrule it for the reasons explained in our resolution of her first two issues.

alerts, the presence of drugs is confirmed, and police may make a warrantless search. If the drug dog does not alert, the officer's suspicions will normally be dispelled, and the citizen may go on his way.

431 S.W.3d 596, 603–04 (Tex. Crim. App. 2014) (citations omitted). In *Matthews*, the police had received a detailed anonymous tip that Matthews was selling crack out of a white van outside a food store. One officer corroborated the tip. The other officer directed Matthews to exit the van. The police did not request a K-9 unit until after a pat-down search of Mathews revealed no contraband or weapons. The evidence showed that the wait for a K-9 unit was estimated at fifteen to twenty-five minutes. The *Matthews* court held that the detention to wait for the K-9 unit after the pat-down was neither unreasonable nor unnecessarily prolonged because the officers' failure to find any contraband or weapons on Matthews did not resolve their suspicion that he was selling drugs from the van or that the van still contained drugs. *Id.* at 605–06.

### 3. The Detention of Appellant to Allow the K-9 Unit to Arrive Was Neither Unreasonable nor Unnecessarily Prolonged.

The trial court's findings indicate that:

- Sergeant Lanier requested a K-9 unit before Sergeant Riggs stopped Appellant;

- Appellant got out of her vehicle when Sergeant Lanier approached the driver's side, locking the running vehicle with her keys inside it;

- Appellant withheld her consent to search the vehicle;

- Sergeant Lanier told her that a K-9 unit was already en route;

- Appellant then exhibited heightened nervousness; and

- The K-9 unit arrived about 20 minutes later.

16

The trial court concluded that Officer Lanier had reasonable suspicion to extend Appellant's detention so that the K-9 unit could perform a sniff of her car and that the detention's length was reasonable.

Appellant argues that even if the sergeants had reasonable suspicion to make a traffic stop, her detention was unreasonably delayed long beyond the time necessary to complete the purpose of the stop. She also argues that Sergeant Lanier was engaged in an impermissible fishing expedition. If Sergeant Lanier had reasonable suspicion based only on Appellant's traffic violations, she would be correct. *See, e.g.*, *Davis v. State*, 947 S.W.2d 240, 245–46 (Tex. Crim. App. 1997). However, as we held above, he also had reasonable suspicion to stop Appellant to investigate her for possession of methamphetamine. Her actions after the stop did nothing to dispel Sergeant Lanier's reasonable suspicion. We hold that the approximate twenty-minute delay to wait for the K-9 unit after Appellant denied Sergeant Lanier permission to search her vehicle was neither unreasonable nor unnecessarily prolonged because his reasonable suspicion that she was carrying methamphetamine in her vehicle to sell out of her Wise County home had not been allayed before the wait for the K-9 unit began. *See Matthews*, 431 S.W.3d at 605–06.

## F.     The Search of Appellant's Vehicle and the Seizure of Evidence from the Vehicle Were Lawful.

Appellant further argues in her third issue that the search of her car was not lawful. An open-air sniff of the exterior of an automobile stopped on the side

of the highway is not a search and does not implicate the Fourth Amendment. *Ilinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 838 (2005).[5]

Under the automobile exception to the warrant requirement, police may search a vehicle without a warrant if they have probable cause to believe the vehicle contains contraband. *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S. Ct. 2013, 2014 (1999); *United States v. Ross*, 456 U.S. 798, 809, 102 S. Ct. 2157, 2164–65 (1982); *Wiede*, 214 S.W.3d at 24. Probable cause to search a vehicle exists when, under the totality of the circumstances, there is a fair probability that evidence of a crime will be found in the place to be searched. *Dixon*, 206 S.W.3d at 616. A dog alerting to the presence of drugs in a vehicle establishes probable cause to search the vehicle. *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003); *Branch v. State*, 335 S.W.3d 893, 901 (Tex. App.—Austin 2011, pet. ref'd), *cert. denied*, 565 U.S. 1206 (2012); *see Parker v. State*, 182 S.W.3d 923, 924 (Tex. Crim. App. 2006) (stating in its discussion of facts that "[t]he dog alerted to the trunk of the vehicle, which gave the officers probable cause to search the trunk").

The trial court here found that the K-9 dog performed an open-air sniff of Appellant's vehicle and alerted on the rear door of the driver's side. That alert

---

[5]We decline to address Appellant's arguments challenging the sniff because she did not raise them in the trial court. *See* Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016).

gave the Wise County sergeants probable cause to search Appellant's vehicle, which they could do without a warrant under the automobile exception. *See Matthews*, 431 S.W.3d at 603–04; *Wiede*, 214 S.W.3d at 24. We therefore hold that the sergeants' search of Appellant's vehicle was lawful. We consequently further hold that the seizure of the items found in the search was lawful. *See United States v. Cooper*, 949 F.2d 737, 747–48 (5th Cir. 1991); *Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.) ("A warrantless search and seizure can be justified under . . . the automobile exception.").

## G. Appellant's Arrest Was Lawful.

Finally, Appellant also contends in her third issue that her arrest was unlawful. A police officer may arrest a person without a warrant if the police have probable cause to arrest the person and the arrest falls within one of the exceptions set out in the code of criminal procedure. Tex. Code Crim. Proc. Ann. arts. 14.01–.04 (West 2015 & Supp. 2017); *Torres*, 182 S.W.3d at 901. Probable cause for a warrantless arrest requires that the officer have a reasonable belief that, based on facts and circumstances within the officer's personal knowledge, or of which the officer has reasonably trustworthy information, an offense has been committed. *Torres*, 182 S.W.3d at 901–02. Probable cause must be based on specific, articulable facts rather than the officer's mere opinion. *Id.* at 902. We use the "totality of the circumstances" test to determine whether probable cause existed for a warrantless arrest. *Id.*

Here, the totality of the circumstances demonstrates that Sergeant Lanier had a reasonable belief based on a reliable tip that Appellant was transporting methamphetamine. After he and Sergeant Riggs found the drugs and other evidence of dealing in Appellant's vehicle, they had probable cause to arrest her without a warrant because she possessed the contraband in their presence. *See* Tex. Code Crim. Proc. Ann. art. 14.01; *Smith v. State*, 491 S.W.3d 864, 870–71 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Taylor v. State*, 410 S.W.3d 520, 529 (Tex. App.—Amarillo 2013, no pet.). We therefore hold that Appellant's arrest was lawful, and we overrule her third issue.

## IV. CONCLUSION

Having overruled Appellant's three issues, we affirm the trial court's judgment.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL: WALKER, KERR, and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 1, 2018

20