Russell Lloyd, Justice
Jose de la Luz Torres was convicted by a jury of continuous sexual abuse of a young child (Count One),[1] two counts of aggravated sexual assault of a child (Counts Two and Three),[2] and two counts of indecency with a child (Counts Four and Five).[3] He was sentenced to forty-three years' imprisonment under Counts One, Two, and Three and twenty years' imprisonment under Counts Four and Five. The sentences for Counts One, Two, and Three are to run concurrently. The sentences for Counts Four and Five are to run concurrently.
*877 And the sentences for Counts Four and Five are to run consecutively to the sentences for Counts One, Two, and Three.
On appeal, Torres raises three issues, the latter two of which Torres addresses together: (1) the Count One child victim's underwear, and DNA analysis of it, should not have been admitted into evidence because the State allegedly failed to reliably authenticate the underwear because the first two links in the chain of custody were not established by the victim and her mother, respectively; (2) the jury charge erroneously allowed for a non-unanimous verdict on Count Two; and (3) the jury charge erroneously allowed for a non-unanimous verdict on Count Three.[4] We affirm.
I. Background
Torres is the uncle of the two children A.S. and V.R. The children's mother, B. Rodriguez, is Torres's half-sister.
A. Torres sexually abuses A.S. over a period of two years.
Torres was charged with abusing his niece, A.S., over the course of two years. A.S. testified at trial. She stated that, when she was ten years old, she lived for a time with Torres, Torres's girlfriend, the girlfriend's daughter, and V.R. She testified that, one night, while Torres's girlfriend was away at work, he first sexually abused her by rubbing her breasts, stomach, and vagina and removing her shorts and putting his penis into her vagina. Over a two-year period, she testified, he committed about two dozen more acts of sexual abuse against her.
His last act of sexual abuse against her occurred while he was living with a friend. A.S. spent the night at the same home, sleeping in the living room with Torres. That night, A.S. testified, he touched her vagina, and she touched his penis. Then her pants were removed and her underwear moved to the side to expose her vagina. Torres then put his penis in her vagina. This time, he told her that he was going to ejaculate in her vagina, and she pushed him away. She put her clothes back on and went to sleep. She went back to her mother's home the next day.
That next day, A.S. told her mother, Rodriguez, about what had happened. She took A.S. to speak to the police. Later, A.S. identified for Rodriguez the underwear that she had been wearing when Torres sexually abused her for the last time. When she returned to Rodriguez's home the day after the abuse, she had put the underwear in the laundry basket, where it stayed, unwashed, until she identified it for Rodriguez.
Rodriguez took the underwear to the police at the Children's Assessment Center ("CAC").
A.S. was interviewed at the CAC by Detective P. Kibodeaux of the Lake Jackson Police Department. Afterward, Rodriguez gave the underwear to Det. Kibodeaux. The State introduced testimony establishing a chain of custody for the underwear from Detective Kibodeaux to the police department's evidence room and then to a laboratory operated by the Department of Public Safety ("DPS").
The underwear was tested for DNA. The testing revealed that there was DNA present in semen stains and that Torres was the likely contributor of the DNA. Further tests confirmed that the semen was Torres's.
B. Torres sexually assaults V.R.
The State also called V.R., another niece of Torres's. She testified that, when she *878 was twelve years old, she lived for a time with Torres, Torres's girlfriend, the girlfriend's daughter, and A.S. One night, while Torres's girlfriend was at work, both V.R. and A.S. were sleeping in Torres's bed. He entered the room, lay down next to V.R., and started touching her all over her body, including her vagina and underneath her clothes. He then pulled her shorts and underwear to the side and put his penis in her vagina for ten minutes.
The next night, V.R. testified, she was still staying at Torres's apartment, and she again went to sleep in Torres's room. He entered the room and touched her in the same spots as he had the night before. He again pulled her underwear to the side, put his penis into her vagina, and left it there for about the same amount of time.
Afterward, V.R. felt uncomfortable, went into the bathroom, and wiped herself. After wiping, she saw something "gooey and clear," which she had never seen before.
According to V.R., these two instances of sexual assault by Torres were "the only two times that it happened" between them, occurring on two successive nights.
Torres was tried by a jury. He did not object to the jury charge. He was convicted on all five counts. The jury was polled, and they confirmed that their verdicts were unanimous.
II. Discussion
A. Evidence Authentication by a Chain of Custody
In his first issue, Torres contends that the underwear A.S. claims to have been wearing during his final act of sexual abuse against her was not reliably authenticated under Rule of Evidence 901. He asserts that the first two steps in the chain of custody were not established by A.S. and Rodriguez, respectively. He contends that the underwear should not have been admitted into evidence and that, therefore, the DNA analysis of the underwear should not have been admitted.
1. Standard of Review and Applicable Law
We review a trial court's decision to admit evidence over an authentication objection for abuse of discretion. Washington v. State , 485 S.W.3d 633, 640 (Tex. App.-Houston [1st Dist.] 2016, no pet.). The trial court's ruling must be within at least the zone of reasonable disagreement. Id.
Authentication is a condition precedent to the admissibility of evidence and is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it to be. See TEX. R. EVID. 901(a) ; Washington , 485 S.W.3d at 640. This can be accomplished by testimony from a witness with knowledge of the facts. Martinez v. State , 186 S.W.3d 59, 62 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd). In a jury trial, the preliminary question for the court to decide is if the proponent of the proffered evidence has supplied sufficient facts to authenticate the evidence. Washington , 485 S.W.3d at 640.
When the chain of custody for an item is the basis for an authentication challenge, the authentication requirement is met once the State has shown the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory. Martinez , 186 S.W.3d at 62. Any gaps and minor theoretical breaches in the chain go to the weight, rather than to the admissibility, of the evidence, absent a showing of tampering. Lagrone v. State , 942 S.W.2d 602, 617 (Tex. Crim. App. 1997) ; Martinez , 186 S.W.3d at 62-64.
*879 2. The chain of custody supports the authenticity of the evidence.
A.S. testified that the day after Torres's final act of sexual abuse against her, she returned to her mother's home and placed the underwear that she had been wearing during the assault into the laundry basket. Both A.S. and Rodriguez testified that A.S. identified the underwear for Rodriguez later that week. Rodriguez testified that she retrieved the underwear from the laundry basket, put it in a bag, and brought it to the CAC to give to police. Det. Kibodeaux received the underwear from Rodriguez after A.S. was interviewed at the CAC. The underwear was taken to the police evidence room and later to the DPS lab for DNA testing by law-enforcement personnel who testified about the procedures used and the care taken to ensure that the underwear tested was the same underwear turned over to the police by Rodriguez.
Torres contends that the first link in the chain of custody-A.S.'s identification of the underwear that she was wearing during the final sexual assault-is missing because A.S. could not identify at trial which of two sets of underwear was the right one. However, Rodriguez testified that she did remember the underwear in question as the one identified in 2012 by A.S. The factfinder evaluates the credibility of testimony and could believe Rodriguez's testimony when she identified that underwear as that given her by A.S. the day after Torres's last act of abuse.
Torres also challenges the second link-Rodriguez's testimony that she took the underwear from the laundry basket to Det. Kibodeaux-because Rodriguez was a convicted felon and thief, and she is therefore not to be believed. This contention goes to Rodriguez's credibility, and it is the factfinder's role at trial to assess witness credibility. See TEX. CODE CRIM. PROC. ANN. art. 38.04 ; Mosley v. State , 355 S.W.3d 59, 70-71 (Tex. App.-Houston [1st Dist.] 2010, pet. ref'd). Given that the State established an unbroken chain of custody from the laundry hamper to the DPS laboratory, Torres's challenge to the second link goes to weight and not to admissibility. Martinez , 186 S.W.3d at 62. Torres offers no evidence of tampering or of a breach in the chain other than attacks on witness credibility. See Lagrone , 942 S.W.2d at 617 ; Martinez , 186 S.W.3d at 62-64. The trial court therefore did not abuse its discretion in admitting the underwear into evidence.
We overrule Torres's first issue.
B. Charge Error Stemming from the Absence of a Unanimity Instruction
In his second and third issues, Torres contends that the jury charge was erroneous because it failed to instruct the jury that, for each of Counts Two and Three, it must unanimously agree on one incident of criminal conduct that meets all the essential elements of the offense beyond a reasonable doubt. Torres failed to object on this basis at trial. However, the trial court is responsible for ensuring unanimity in the charge whether or not there is an objection. See Ashton v. State , 526 S.W.3d 490, 499 n.2 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd).
1. Standard of Review and Applicable Law
We review a claim of jury-charge error under a two-pronged approach. Id. at 499. First, we determine whether error exists in the jury charge. Id. Second, we determine whether egregious harm was caused by that error, requiring reversal. Id. The appellant must meet both prongs. See id.
A jury must reach a unanimous verdict about the specific crime that the *880 defendant committed. Id. This means that the jury must agree upon a single and discrete incident that would constitute the commission of the offense alleged. Id. Non-unanimity becomes possible "when the jury charge fails to properly instruct the jury, based on the indicted offense(s) and specific evidence in the case, that its verdict must be unanimous." Id. A non-unanimous verdict can occur when the State charges one offense and presents evidence that the defendant committed that offense on multiple separate occasions. Id. A charge that allows for a non-unanimous verdict in such cases contains error. Id.
When a defendant does not object to an erroneous charge, reversal is required only if the error results in egregious harm. Id. at 500. Egregious harm is a "high and difficult standard" to meet, and such a determination must be "borne out by the trial record." Id. (quoting Villarreal v. State , 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) ). Egregious harm is established when the erroneous jury instructions affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." Id. The analysis takes into account four factors: (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the trial record as a whole. Id. If, on balance, these four factors do not weigh in favor of concluding that egregious harm is present, then we will affirm the judgment of conviction. See ids="6889160" index="27" url="https://cite.case.law/sw3d/453/429/#p433">id. at 503 ; see also Harper v. State , 540 S.W.3d 223, 233 (Tex. App.-Houston [1st Dist.] 2018, pet. ref'd) ("Thus, the charge itself is the only factor that potentially weighs in favor of harm. The state of the evidence and the parties' arguments weigh in favor of finding no egregious harm, and there are no other relevant issues that have a substantial bearing on the case. We hold that Cornelius was not egregiously harmed by the presumed charge error.").
A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means and if the victim is younger than fourteen years of age, regardless of whether the person knows the age of the child at the time of the offense. See TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B).
2. Failure to show that Torres was egregiously harmed by the absence of a unanimity instruction
In Count Two, the State charged Torres with aggravated sexual assault of V.R. by penetrating her sexual organ "on or about the 15th day of August, 2012...." In Count Three, the State charged Torres with aggravated sexual assault of V.R. by penetrating her sexual organ "on or about the 16th day of August, 2012...." The jury instructions on these two counts tracked these two separate charges.
Torres argues that the charge contains error because "... the evidence at trial detailed multiple acts supportive of the charges" in Counts Two and Three and that the trial court erred in failing to instruct the jury that it must unanimously agree on one incident of criminal conduct to support a conviction under each of these counts. He asserts that this result is compelled by the holding in Cosio v. State , 353 S.W.3d 766 (Tex. Crim. App. 2011). However, this is a misinterpretation of both the facts of this case and the holding in Cosio .
In Cosio , the defendant Cosio was indicted on four counts. The first was for causing his sexual organ to penetrate the victim's mouth on or about July 31, 2004. The second was for causing his sexual *881 organ to penetrate the victim's sexual organ on or about July 31, 2004. The third was for touching the victim's genitals on or about July 31, 2007. And the fourth was also for touching the victim's genitals on or about July 31, 2007. 353 S.W.3d at 769-70.
Cosio's victim testified about four instances of sexual misconduct. The first was when she was seven or eight years old and involved Cosio touching her breasts and her "private part, mostly everywhere," while she was showering. The second happened about a week later and involved Cosio touching her breasts and her whole body, kissing her, making her "suck his penis," and putting his penis in her vagina for about three minutes. The third happened "[a]t some unidentified time" and involved Cosio making her "suck his penis" on the way to a Burger King and on the way home from the Burger King. The fourth happened when she was nine or ten years old and involved Cosio showing her a pornographic movie and forcing her to "try" the positions shown in the film, including by putting his penis in her vagina. Id. at 769.
The trial court failed to include a unanimity instruction in the charge requiring the jury to unanimously "agree upon a single and discrete incident that would constitute the commission of the offense alleged." Id. at 771 (quoting Stuhler v. State , 218 S.W.3d 706, 717 (Tex. Crim. App. 2007) ). The Court of Criminal Appeals held that the jury charge was erroneous because more than one instance of criminal conduct supported each of the four separate counts occurring on two separate days three years apart and because the charge failed to instruct the jury that it had to be unanimous about which instance of misconduct constituted which offense. Id. at 770-71, 774. Thus, it was impossible to tell what the jury unanimously agreed constituted a particular charged criminal count. The first count could have been supported by either the second or the third instance of sexual misconduct that the victim testified about. Id. at 770, 774. The second count could have been supported by either the second or the fourth instance. Id. The third and fourth counts each could have been supported by either the first, second, or fourth instance. Id. These were therefore examples of "non-unanimity ... occur[ring] when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." Id. at 772. The court pointed out that "[t]he evidence failed to differentiate between the similar, but yet separate, incidents of criminal conduct in relation to the offenses as charged and the alleged on or about dates. " Id. at 774 (emphasis added).
In this case, V.R. testified about two and only two essentially identical acts of sexual misconduct which occurred on two consecutive days. Torres was charged, in Courts Two and Three, with two acts of sexual misconduct involving V.R. on two consecutive days. Even assuming without finding that the charge contains error, the facts vary widely from those that justified reversal in Cosio . There are no multiple acts of conduct from which a jury can select in order to convict on one charge, as in Cosio . See ids="8321420" index="40" url="https://cite.case.law/sw3d/218/706/#p717">id. at 770-74. There is evidence of only one repeated act of misconduct, aggravated sexual assault, on each of two consecutive days to support the charge of one act of misconduct on each of two consecutive days. This charge mitigates any risk of a non-unanimous verdict on the two charges and makes for an uncomplicated egregious-harm analysis, which we will now pursue under the factors set out in Villarreal. See 453 S.W.3d at 433.
a. Entirety of the charge
In evaluating whether or not egregious harm occurred, we first consider the *882 jury charge itself. The jury was instructed that Torres was charged in Count Two for assaulting V.R. by penetrating her sexual organ on or about August 15 and in Count Three for similarly assaulting V.R. on or about August 16. As discussed above, the inclusion of the two separate dates in the instructions along with evidence of only two sexual assaults, one on each of those separate but consecutive dates, mitigates the risk of non-unanimous verdicts on the two charges. The entirety of the charge does not weigh in favor of egregious harm.
b. State of the evidence
We next consider the state of the evidence. V.R. testified about two, and only two, instances of Torres assaulting her. She testified that, one day, while she was living with Torres and his girlfriend, and while the girlfriend was at work, Torres started touching her all over her body, including her vagina and underneath her clothes; he pulled her shorts and underwear to the side and put his penis into her vagina. She then testified that, the next night, Torres entered the room where she was trying to sleep, touched her in the same spots, pulled her underwear to the side again, and put his penis into her vagina again for about the same amount of time as before. These two events of sexual assault by Torres were, according to V.R., "the only two times that it happened."
Further, Torres did not testify, and he does not point us to any trial testimony undermining V.R.'s testimony about two, separate, consecutive dates of assault. Torres presented an "all-or-nothing" defense, denying that he committed any assault whatsoever against V.R. Because the jury was presented with two opposing narratives-V.R.'s story against Torres's claim that he never assaulted her-had the jury believed Torres's defense and not V.R.'s testimony, they "would have acquitted [Torres] of all charges." Arrington v. State , 451 S.W.3d 834, 844 (Tex. Crim. App. 2015) ; accord Ashton , 526 S.W.3d at 502. Instead, by convicting him, they indicated that they did not believe his defense. See Ashton , 526 S.W.3d at 502 (quoting Arrington , 451 S.W.3d at 844, and holding that state of evidence did not weigh in favor of egregious harm in part because "the jury was presented with two opposing narratives in this case-[the victim]'s story, and appellant's claim that he never sexually assaulted [her]"-and had "the jury believed appellant's version of events over [the victim]'s testimony, the jury 'would have acquitted [appellant] of all charges' "); Ruiz v. State , 272 S.W.3d 819, 826 (Tex. App.-Austin 2008, no pet.) (holding that, in light of defendant's all-or-nothing defense, evidence that defendant continually abused complainant for five years, in addition to evidence of specific instances of abuse, did not weigh in favor of egregious harm because, had jury believed defendant, it would have acquitted on all counts).
In Cosio , the Court of Criminal Appeals held that the jury charge was erroneous because more than one instance of criminal conduct supported each separate count and because the charge failed to instruct the jury that it had to be unanimous about which instance of misconduct constituted which offense. 353 S.W.3d at 770-71, 774. That is not the case here. Torres was charged with, and the jury was instructed on, two counts, an aggravated sexual assault occurring on one day and a second aggravated sexual assault occurring the next day. V.R. testified similarly. The State therefore did not charge Torres with one offense for which evidence of multiple, separate offenses was presented. See ids="7319019" index="48" url="https://cite.case.law/sw3d/353/766/">id. at 772. He was charged with two offenses whose "on or about dates"-see id. at 774 -when coupled with the testimony, differentiated the two offenses into two discrete *883 acts of the same type provable by the same type of evidence.
The state of the evidence therefore does not weigh in favor of egregious harm.
c. Arguments of counsel
We also consider the arguments of counsel. During closing argument, the State reiterated the two, and only two, instances of assault against V.R.:
So, moving on to the counts with [V.R.], Counts Two and Three. What are the core elements there? Defendant intentionally or knowingly caused his sexual organ to contact or penetrate the sexual organ of [V.R.], on one day -- remember it happened one day and then the next day -- and that during that time [V.R.] was fourteen years of age or younger -- excuse me -- younger than fourteen and not his spouse. Pretty basic. One day they have sexual intercourse. The next day they had sexual intercourse. [emphasis added]
Defense counsel's closing argument did not address verdict unanimity; it focused on reasonable doubt, the acts against A.S., and the State's witnesses' credibility.
Torres responds that the State's emphasis in closing argument on the requirement of unanimity for Count One contrasts with the State's failure to emphasize unanimity for Counts Two and Three. However, Torres fails to address the State's reference to two, and only two, assaults on two, separate days. Therefore, neither the State's nor the defense's closing arguments exacerbated or emphasized any possible charge error. See Ashton , 526 S.W.3d at 503 (concluding that arguments-of-counsel factor "is neutral with respect to a finding of egregious harm" because counsel's arguments "did not exacerbate or ameliorate the charge error by arguing to the jury that unanimity was (or was not) required"). This factor does not weigh in favor of egregious harm.
d. Other relevant information in the record
Torres does not raise anything further from the record bearing on the verdict-unanimity issue. After reviewing the entirety of the record, nothing else in the record bears on the unanimity issue on Counts Two and Three. Therefore, this factor weighs neither in favor nor against a finding of egregious harm. Id. (concluding that "fourth factor weighs neither in favor of [n]or against a finding of egregious harm" because "there is no additional relevant evidence that the jurors were less than unanimous in their verdicts").
3. Conclusion of Harm Analysis
No factor weighs in favor of a finding of egregious harm, three factors weigh against such a finding, and one factor is neutral. In light of our analysis under the four factors, and after reviewing the record in its entirety, we cannot say that Torres was egregiously harmed by the absence of a unanimity instruction. See ids="12407989" index="52" url="https://cite.case.law/sw3d/526/490/">id. (citing Arrington , 451 S.W.3d at 839-40 ). We hold that Torres was not egregiously harmed by any non-unanimity error in the charge. See itation case-ids="6896504" index="54" url="https://cite.case.law/sw3d/451/834/#p844">id. (citing Arrington , 451 S.W.3d at 845 ). We overrule Torres's second and third issues.
III. Conclusion
We affirm the judgment of the trial court.

Tex. Penal Code Ann. § 21.02(b).

Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B).

Tex. Penal Code Ann. § 21.11(a)(1).

Torres does not appeal his convictions under Counts Four and Five.