

# NUMBER 13-18-00601-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

BENITO HINOJOSA,          **Appellant,**

**v.**

THE STATE OF TEXAS,          **Appellee.**

### On appeal from the 156th District Court of Bee County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Chief Justice Contreras

Appellant Benito Hinojosa appeals his conviction for aggravated sexual assault of a child under the age of six, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii). By three issues, appellant argues that (1) the indictment and jury charge allowed for a non-unanimous verdict, (2) the trial court erred when it denied

appellant's motion for a mistrial, and (3) the trial court erred when it failed to instruct the jury to disregard the testimony of a witness. We affirm.

## I. BACKGROUND

Appellant and his ex-wife Stephanie shared custody of their children, C.H. and B.H.[1] On December 13, 2016, appellant was indicted for the aggravated sexual assault of his daughter C.H. *See id.* The indictment alleged that "on or about the 6th day of September, A.D., 2013, [appellant] did then and there intentionally and knowingly cause the sexual organ of [C.H.] to contact the sexual organ of [appellant], and the said [C.H.] was then under six years of age." Appellant pleaded not guilty and proceeded to trial.

During the guilt phase of trial, the State presented evidence of various instances of sexual misconduct involving appellant and C.H. The jury heard evidence that, one morning in July or August of 2013, when C.H. was five years old, Stephanie found appellant and C.H. both naked in appellant's bed at his home (the July incident). Stephanie asked him why C.H.'s private area was red and inflamed, but appellant did not provide an answer. The jury also heard that C.H. told Stephanie that appellant had put his penis in her vagina the night before C.H. and B.H. had a soccer match in September of 2013 (the September incident).[2]

C.H. testified of a single unspecified date when appellant placed her on the bed, laid on top of her, and touched her sexual organ with his sexual organ. Sarah Radulescu, C.H.'s counselor, testified that C.H. told her that appellant's sexual organ had contacted C.H.'s sexual organ two unspecified times.

---

[1] To protect the identity of the children, we refer to those involved in the case by aliases, as necessary. *See* TEX. R. APP. P. 9.8(b).

[2] The children's grandmother visited them that weekend for the soccer game, and pictures from that day were admitted into evidence.

B.H., C.H.'s older brother, also testified at trial. During his testimony, he explained that he, his mother, and the prosecutor met for dinner after the first night of trial. During the dinner, B.H. read a book that Stephanie discussed during her testimony. After the State rested its case, appellant moved for a mistrial on the basis that B.H. and Stephanie had violated Texas Rule of Evidence 614, concerning sequestration of witnesses ("the Rule"). The trial court overruled the request. Appellant then requested that the trial court instruct the jury to disregard B.H.'s testimony and that request was also overruled.

Appellant testified that he never had any inappropriate sexual contact with C.H. and accused the other witnesses of lying. The jury found appellant guilty of the offense and assessed punishment at ninety-nine years' imprisonment. This appeal followed.

## II. JURY CHARGE

By his first issue, appellant argues that the indictment and jury charge allowed the jury to convict him without being unanimous as to the specific criminal act he committed.

### A. Standard of Review

"[I]n each felony case . . . tried in a court of record, the judge shall, before the argument begins, deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14. Our first duty in analyzing an alleged jury-charge error is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether the defendant preserved the error by objection. *Id.* If there is error and the defendant preserved the alleged error, then we must reverse as long as the error was not harmless. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the defendant failed to object, then we will reverse only if the record shows egregious harm. *See Ngo*, 175

3

S.W.3d at 750; *Cueva v. State*, 339 S.W.3d 839, 848 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd).

An egregious harm determination must be based on a finding of actual rather than theoretical harm. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). Actual harm is established when the erroneous jury instruction affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Id.* "This is a high and difficult standard which must be borne out by the trial record." *Reeves*, 420 S.W.3d at 816.

**B. Jury Unanimity**

A jury must reach a unanimous verdict about the specific crime that the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *see Cueva*, 339 S.W.3d at 848–49 ("A unanimous verdict is more than a mere agreement on a violation of a statute; it ensures that the jury agrees on the factual elements underlying an offense."). Non-unanimity may occur when (1) the charge fails to properly instruct the jury that its verdict must be unanimous and (2) the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. *See Cosio*, 353 S.W.3d at 771–72. This is so because each incident of criminal conduct individually establishes a distinct offense or "unit of prosecution." *Id.* at 722. To guarantee jury unanimity, the jury must be instructed that it must unanimously agree on one incident of criminal conduct, based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt. *Id.* at 776. This means that the jury must agree that the defendant committed the same, single, specific criminal act. *Id.* at 773.

4

A defendant may choose to require the State to elect a specific criminal act that it relies upon for conviction. *Smith v. State*, 515 S.W.3d 423, 428 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *see Cosio*, 353 S.W.3d at 775; *O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988). This choice is strategic and may be waived or forfeited. *Cosio*, 353 S.W.3d at 775; *Smith*, 515 S.W.3d at 428–29. One reason a defendant may decide against demanding an election is that, if the State does not elect, it will be jeopardy-barred from prosecuting the other offenses that were in evidence. *Smith*, 515 S.W.3d at 429; *see Cosio*, 353 S.W.3d at 775. However, even if the defendant does not require an election, it is the trial judge's responsibility to ensure unanimity through the instructions in the jury charge. *Smith*, 515 S.W.3d at 429; *see* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Cosio*, 353 S.W.3d at 776.

## C. Analysis

Here, there was evidence that appellant committed at least two separate criminal acts that would constitute aggravated sexual assault of a child under the age of six. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iii); *Cosio*, 353 S.W.3d at 774.

The indictment alleged that appellant on or about September 6, 2013, "did then and there intentionally and knowingly cause the sexual organ of [C.H.] to contact the sexual organ of [appellant], and [C.H.] was then under six years of age." *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii). The application paragraph of the jury charge tracked the language of the indictment and stated:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of September, A.D., 2013, in Bee County, Texas, the defendant, BENITO HINOJOSA, did then and there intentionally or knowingly cause the sexual organ of [C.H.] to contact defendant's sexual organ and said [C.H.] was then younger than six years of age, then you will find the defendant guilty of Aggravated Sexual Assault of a Child Under the Age of Six, as charged in the indictment.

However, the charge did not include an instruction providing that the jury must be unanimous as to the specific criminal act underlying the offense. *See Cosio*, 353 S.W.3d at 772 ("[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions."). Thus, the charge was erroneous because it allowed for a non-unanimous verdict. *See id.*; *Ngo v. State*, 175 S.W.3d 738, 748 (Tex. Crim. App. 2005); *see also Pena v. State*, No. 07-14-00163-CR, 2015 WL 3532988, at *3 (Tex. App.—Amarillo June 4, 2015, pet. ref'd) (mem. op., not designated for publication).

Because appellant did not object to the charge at trial, we must next determine whether appellant was egregiously harmed by the erroneous jury instruction. *See Ngo*, 175 S.W.3d at 750. To do so, we consider: (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Arrington*, 451 S.W.3d at 840; *Cosio*, 353 S.W.3d at 777. This is a fact-specific analysis done on a case-by-case basis. *Arrington*, 451 S.W.3d at 840.

### 1. The Jury Charge

As discussed above, the jury charge did not specifically instruct the jurors that they must be unanimous as to the specific act of conduct underlying the alleged offense. Further, the single, generic boiler-plate instruction included in the charge that the jury must unanimously agree on a verdict does not cure the error.[3] *See Cosio*, 353 S.W.3d at 773; *Smith*, 515 S.W.3d at 430. However, we note that the application paragraph in the

---

[3] The jury charge here provided that:

> After you retire to the jury room, you should select one of your members as your Presiding Juror. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify your verdict by using the appropriate form attached hereto, and signing the name as Presiding Juror.

charge provided that the specific act underlying the offense occurred on or about September 6, 2013, as well as the specifics of how the offense was committed, and that there was evidence presented of only one specific act of conduct in September of 2013 that satisfied this charged offense. This mitigates the risk of a non-unanimous verdict. *See Garcia v. State*, No. PD-0035-18, 2019 WL 6167834, at *4, __ S.W.3d __, __ (Tex. Crim. App. Nov. 20, 2019) (noting that "the fact that the court's charge focused the jury's attention on a single criminal incident may have vindicated Garcia's right to a unanimous verdict"); *De la Luz Torres v. State*, 570 S.W.3d 874, 882 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *see also Cosio*, 353 S.W.3d at 777 (noting that nothing in the charges there militated against the conclusion that they permitted for non-unanimous verdicts). We conclude that the entirety of the charge does not weigh in favor of finding egregious harm. *See Arrington*, 451 S.W.3d at 841.

### 2. The Evidence

We next look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm. *Arrington*, 451 S.W.3d at 481; *Smith*, 515 S.W.3d at 430.

Again, there was evidence of only one specific act in September of 2013 that satisfied the charged offense. This makes it less likely that the jury charge caused appellant harm because the charge pointed the jury's attention to that date. *See Garcia*, 2019 WL 6167834, at *4, __ S.W.3d at __ ("The instructions' description of the incident . . . was just enough information for the jury to distinguish it from all of the other incidents upon which the jury could, consistent with the indictment and the court's instructions, vote to convict.").

7

Furthermore, appellant's defense was an unequivocal denial that any sexual contact ever occurred between him and C.H. Thus, if the jury had believed appellant, then it would have acquitted him. *See Arrington*, 451 S.W.3d at 844; *Cosio*, 353 S.W.3d at 777; *De la Luz Torres*, 570 S.W.3d at 882; *Ruiz v. State*, 272 S.W.3d 819, 826–27 (Tex. App.—Austin 2008, no pet.) (concluding that the state of the evidence weighed against finding egregious harm when defendant did not argue that he was guilty of only some of the allegations of abuse, but instead argued that he had not committed any of the alleged conduct, leaving the jury with a "all-or-nothing" decision). In finding appellant guilty, the jury necessarily disbelieved his defensive evidence. *See Arrington*, 451 S.W.3d at 842.

This factor weighs against a finding of egregious harm. *See id.*

### 3. The Parties' Arguments

Next, we look to the parties' arguments. Under this factor, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated the error in the charge. *Arrington*, 451 S.W.3d at 844; *Smith*, 515 S.W.3d at 431; *see, e.g.*, *Ngo*, 175 S.W.3d at 750.

In its opening statement, the State mentioned the July incident and the September incident but clarified that the September incident was the one used to determine the date alleged for the offense in the indictment. Appellant did not mention any date or alleged act of sexual misconduct in his opening statement.

During appellant's closing argument, his counsel specifically highlighted that the incident in dispute was the alleged sexual assault that occurred the night before the soccer game—i.e., the September incident. Defense counsel stated: "State introduced a picture the morning after—or of this alleged soccer game, I guess, that the kids were in. That is here in evidence. I think there was testimony that basically that was the morning

8

after this incident that was talked about where [C.H.] was sexually assaulted by her dad[,] sitting there smiling in that picture." On the other hand, the State's closing argument generally addressed the evidence and why, in light of that evidence, appellant's assertion that this was all fabricated was implausible. In doing so, the State referred specifically to the July incident and explained that Stephanie hesitated on taking action at that time because she could not believe that a father would "rape" his five-year-old biological daughter. The State did not mention the September incident or that particular date nor did it in any way express what specific act it was relying on.

Finally, neither the State nor appellant told the jurors that they must be unanimous about the specific act underlying a guilty verdict, nor were they told that they need not be unanimous. *See Cosio*, 353 S.W.3d at 777 (noting neither party nor the trial court added to charge error because they did not tell the jury it did not have to be unanimous and, therefore, this factor did not weigh in favor of finding egregious harm).

We conclude that this factor is neutral towards a finding of egregious harm. *See Arrington*, 451 S.W.3d at 844; *Cosio*, 353 S.W.3d at 777.

### 4. Conclusion

Balancing the factors together, we conclude that appellant did not suffer actual egregious harm from the error in the charge. *See Arrington*, 451 S.W.3d at 845; *Cosio*, 353 S.W.3d at 777–78.

We overrule appellant's first issue.

### III. THE RULE

Appellant's second and third issues are both based on appellant's assertion that "the Rule" was violated by B.H., Stephanie, and the State's prosecuting attorney.

9

## A. Texas Rule of Evidence 614

When a party invokes the Rule, or it is invoked on the court's own motion, the trial court orders witnesses to remain outside the courtroom so that they cannot hear other witnesses' testimony.[4] TEX. R. EVID. 614; *see Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003). The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Witnesses, when placed under the Rule, "shall be instructed by the court that they are not to converse with each other or with any other person about the case, except with permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under" the Rule. TEX. CODE CRIM. PROC. ANN. art. 36.06; *Qualls v. State*, 547 S.W.3d 663, 676 (Tex. App.—Fort Worth 2018, pet. ref'd). If the Rule has been invoked, even a witness not yet sworn or admonished about the Rule violates it by listening to testimony or talking about it. *Qualls*, 547 S.W.3d at 677.

A violation of the Rule, however, is not necessarily reversible error. *Archer v. State*, 703 S.W.2d 664, 666 (Tex. Crim. App. 1986); *Qualls*, 547 S.W.3d at 677. A trial court has discretion to admit the testimony from a witness who violated the Rule. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996); *Qualls*, 547 S.W.3d at 677. An abuse of discretion occurs when the violative testimony harms or prejudices the defendant. *Archer*, 703 S.W.2d at 666; *see also Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989) (noting that harm to a defendant is shown when (1) the witness actually conferred with or heard testimony of other witnesses, and (2) the witness's testimony contradicted

---

[4] The Rule contains several exceptions which are not applicable here. *See* TEX. R. EVID. 614.

testimony of a witness from the opposing side or corroborated testimony of a witness with whom he or she had conferred or heard).

## B.  Motion for Mistrial

By his second issue, appellant argues that the trial court erred when it denied his motion for a mistrial.

### 1.  Applicable Law & Standard of Review

"A mistrial is a device used to halt trial proceedings where error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Guerrero v. State*, 528 S.W.3d 796, 801 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 886 (Tex. Crim. App. 2009). Because it is an extreme remedy, a mistrial should be granted only when residual prejudice remains after less drastic alternatives are explored. *Id.* at 884–85. Less drastic alternatives include questioning the jury about the extent of any prejudice, if instructions alone do not sufficiently cure the problem. *Id.* at 885. Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative. *Id.*

We review the trial court's decision on a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling, and we will uphold the ruling if it was within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109,

112 (Tex. Crim. App. 2007). A trial court abuses its discretion in denying a motion for mistrial only when no reasonable view of the record could support its ruling. *Id.*

### 2. Analysis

At the commencement of trial proceedings, appellant invoked the Rule. *See* TEX. R. CIV. P. 164. During B.H.'s testimony, appellant learned of the possibility that the Rule had been violated by B.H. and Stephanie when they had dinner with the prosecutor after the first night of trial. After another witness testified, the State rested its case. Appellant then moved for a mistrial on the basis that the Rule had been violated.

In *Griggs v. State*, the Texas Court of Criminal Appeals reviewed the preservation of a motion for mistrial. *See Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). There, the grounds for appellant's motion for mistrial first became apparent during a witness's testimony, but the appellant failed to move for a mistrial until after the conclusion of the testimony. *Id.* In concluding that the appellant's motion for mistrial was untimely, the court noted that, in accordance with Texas Rule of Appellate Procedure 33.1, a motion for mistrial must be both timely and specific, and it is timely "only if it is made as soon as the grounds for it become apparent." *Id.*; *see* TEX. R. APP. P. 33.1.

Here, appellant did not object or move for a mistrial on the basis that the Rule had been violated until after the State rested its case. Accordingly, we conclude that appellant's objection was untimely and that this issue was not preserved for our review. *See* TEX. R. APP. P. 33.1; *Griggs*, 213 S.W.3d at 927; *see also Musich v. State*, No. 13-13-00638-CR, 2016 WL 1316549, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2016, pet. ref'd) (mem. op., not designated for publication).

We overrule appellant's second issue.

## C. Instruction to Disregard

By his third issue, appellant argues that the trial court erred when it denied his request for an instruction to the jury to disregard B.H.'s testimony.

However, we again conclude that this complaint has not been preserved for our review. To have preserved this issue, appellant must have objected to the violation of the Rule at the earliest possible moment. *Bryant v. State*, 282 S.W.3d 156, 162 (Tex. App.—Texarkana 2009, pet. ref'd); *see* TEX. R. APP. P. 33.1; *Peters v. State*, 997 S.W.2d 377, 384 (Tex. App.—Beaumont 1999, no pet.). As previously noted, appellant did not complain of B.H.'s testimony on the basis that the Rule had been violated until after the State rested its case.

We overrule appellant's third issue.

## IV.  CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
6th day of February, 2020.

13