**Opinion filed September 30, 2021**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-19-00347-CR & 11-19-00348-CR

_____

**JOSHUA TAYLOR WEEDON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause Nos. CR25997 & CR25998**

### M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Joshua Taylor Weedon, of the offense of tampering with physical evidence, a third-degree felony, and the offense of possession of a controlled substance, methamphetamine, also a third-degree felony. *See* TEX. PENAL CODE ANN. § 37.09(a)(1), (c), (d)(1) (West 2016) (tampering); TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c) (West 2017) (possession).  In each cause, Appellant pled "True" to one enhancement allegation, and the trial court

found the enhancement to be true. The trial court assessed Appellant's punishment at imprisonment for fifteen years in the Institutional Division of the Texas Department of Criminal Justice for each conviction, set to run concurrently. In each appeal, Appellant challenges his conviction on three grounds: (1) that the evidence was legally insufficient to sustain his convictions, (2) that the trial court abused its discretion in refusing to grant his motion for a mistrial after the prosecutor asked an improper question, and (3) that the trial court abused its discretion in admitting physical evidence because the chain of custody was compromised. We affirm.

*Background Facts*

Investigator Carlyle Gover had been investigating Appellant for about a year before a reliable, confidential informant told Investigator Gover that Appellant had been routinely borrowing a car belonging to Tina Powell, a known associate of drug dealers in Brown County, to transport methamphetamine from the Dallas–Fort Worth Metroplex to Brown County about once per month. Investigator Gover sought and obtained a search warrant authorizing the installation of a tracking device on Powell's 2010 silver Cadillac, in order to be alerted when it traveled from Appellant's residence to the Dallas–Fort Worth metro area. On December 12, 2017, Powell's vehicle left Appellant's residence at 2:20 a.m., arriving just outside Fort Worth in Kennedale at 6:22 a.m., where it stayed for about five or six hours before heading back toward Brown County. Investigator Gover contacted Investigator Robert Ramirez and Deputy Jose Rodriguez of the Brown County Sheriff's Office, and Sergeant Brandon McMillian from the K-9 unit of the Early, Texas Police Department, for assistance in stopping the vehicle. Deputy Rodriguez stopped Powell's vehicle and discovered Appellant sitting in the driver's seat and a woman, Melody Luann Sims, sitting in the front passenger seat of the vehicle.

When Sergeant McMillian arrived on the scene, he escorted the police canine around the vehicle, at which point the dog gave a positive alert indicating the

presence of a controlled substance. At that point, Investigator Gover and Investigator Ramirez, began conducting a search of the vehicle for contraband. During that search, they found the following items: (1) a camouflage bag behind the driver's seat, which contained four unused "meth pipes" and a can of butane fuel; (2) a small, zippered bag in the driver's side floorboard that was open and had clear plastic tubing protruding from it; (3) a purple "dope kit" containing a used meth pipe and a syringe preloaded with methamphetamine in Sims's purse; (4) a second used meth pipe with usable methamphetamine still stuck to the bowl in Sims's purse but outside the "dope kit"; and (5) a small glass jar containing two baggies of methamphetamine, which was also found in Sims's purse but outside the "dope kit." Sims told the officers that the glass jar containing the baggies of methamphetamine belonged to Appellant and that he had handed it to her before being stopped by Deputy Rodriguez. Both Appellant and Sims were arrested.

## Discussion

### I. Issue One – The evidence of care, custody, control, or management and of concealment is sufficient to sustain Appellant's convictions.

#### A. Standard of Review

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). In short, "courts of appeals should . . . determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

4

B. *Analysis*

Appellant contends that the evidence is insufficient to show possession by him of methamphetamine because the State only showed that he was in close proximity to the methamphetamine. Although Sims claimed that Appellant had handed her the drugs prior to the stop, Sims did not testify at trial. Appellant therefore contends that Sims's out-of-court statements given through the testimony of Sergeant McMillian cannot be used substantively to support the allegation that the drugs were Appellant's nor to buttress his convictions for possession and tampering. Appellant argues that Sims's statements were hearsay that did not fall within the coconspirator exception to the hearsay rule and that beyond Sims's out-of-court statements, no other corroborating evidence linked him to the methamphetamine that the officers discovered in Sims's purse. Appellant, therefore, attacks Sims's statement as unconfronted hearsay that should not have been admitted by the trial court and should not be considered by this court in conducting our review. Appellant did not, however, object to the introduction of Sims's out-of-court statement at trial and thus failed to preserve that issue for appeal.[1] But more importantly, we consider all evidence admitted at trial for the purpose of a sufficiency review under *Jackson v. Virginia*. Thus, evidence that is offered and admitted from any party, even over Appellant's proper objection, would still be considered in our review of the sufficiency of the evidence, including Sims's hearsay statements. *See Moff v. State*, 131 S.W.3d 485, 488 n.11 (Tex. Crim. App. 2004) (citing *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988)).

---

[1]The record indicates that it was actually Appellant who initially introduced Sims's out-of-court statement into evidence during cross-examination of Sergeant McMillian.

> Q: Well, what did Ms. Sims tell you? I want to hear this.
>
> A: Ms. Sims told me that the container that contained methamphetamine belonged to Mr. Weedon, and that he handed it to her prior to – prior to them being stopped by the sheriff's office, and she didn't know what to do with it, so she put it in her purse.

As to his tampering conviction, Appellant contends that he could not have tampered with the contraband if he never possessed it in the first place. Consequently, resolving Appellant's arguments regarding his possession conviction is dispositive of the contention asserted by Appellant as to his tampering conviction.

In our sufficiency of the evidence review of the entire record, we note that evidence corroborating possession and tampering included the testimony of Investigator Gover, who had been investigating Appellant for about a year regarding methamphetamine distribution. He received a tip from a reliable, confidential informant that Appellant had been using Tina Powell's vehicle to retrieve methamphetamine from the Dallas–Fort Worth metro area and transport it back to Brown County. Investigator Gover testified that Dallas–Fort Worth is a hub for methamphetamine distribution in Texas. He was familiar with Powell through previous work, as she associated with known drug dealers. Based on the reliable, confidential informant's tip, Investigator Gover applied for and received a search warrant to place a tracking device on Powell's 2010 silver Cadillac. Investigator Gover testified that the vehicle left Appellant's house on December 12, at 2:20 a.m., briefly stopped in Ranger, Texas, and arrived in Kennedale, Texas, just outside of Fort Worth, at 6:22 a.m., where it remained for only five to six hours before heading back toward Brown County, where it was pulled over. Investigator Gover testified that "drug runs" are commonly executed in the early morning hours when few motorists are on the roads. Importantly, it was Appellant that was driving Powell's vehicle, consistent with the confidential tip that the police had received. Appellant had a female passenger with him, Sims, which Investigator Gover explained is a common occurrence with male drug dealers as a security measure for hiding evidence in the event that they are stopped by police.

Further, Sergeant McMillian, the K-9 officer on the scene, testified that his canine alerted to the vehicle, indicating that drugs were present. Investigator

6

Ramirez testified that he found four unused meth pipes and a can of butane fuel in Appellant's own bag and that Appellant acknowledged that the pipes were his but characterized them as "ornaments." When Appellant exited the vehicle at Deputy Rodriguez's request, Investigator Ramirez observed, in plain view, a partially open bag in the floorboard of the driver's side of the vehicle, with clear plastic tubing sticking out. The location and state of the bag were highly unusual, according to Investigator Gover—as if the bag had been placed in the floorboard to facilitate a hurried removal of evidence, which would explain why the bag would be situated by the gas and brake pedals, wide open, with some of its other contents protruding. Further, the location of one pipe in Sims's purse inside the "dope kit" and one inside her purse but outside the "dope kit" was unusual, Investigator Gover testified, because the very purpose of a "dope kit" is to keep all contraband in a single location so that it is easier to abandon incriminating evidence in a moment's notice. Appellant also admitted that he owned some of the drug paraphernalia, though he did not characterize it as such. Even if we were to ignore Sims's statements, the jury could have rationally found that the other corroborating evidence detailed above sufficiently connected Appellant to the possession of the methamphetamine.

In cases involving unlawful possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew that the matter possessed was contraband. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Ibarra*, 479 S.W.3d 481, 487 (Tex. App.—Eastland 2015, pet. ref'd). When the accused is not shown to have had exclusive possession of the place where the contraband was found, the evidence must link the accused to the contraband and establish that the accused's connection with the drug was more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). In such cases, appellate courts apply the well-

accepted "affirmative links" rule. *Id.* at 161. As the Court of Criminal Appeals has explained:

> Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of . . . drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.

*Id.* at 162 (footnotes omitted). Thus, "[w]hen the contraband is not in the exclusive possession of the defendant," as is the case here, "a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference." *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016).

The Court of Criminal Appeals has specifically endorsed fourteen factors that this court may consider in determining whether there are sufficient "links" to connect an accused to the drugs. *Id.* at 414. These fourteen factors include:

> (1) the accused's presence when the search was executed; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of a controlled substance when he was arrested; (5) whether the accused possessed other contraband when he was arrested; (6) whether the accused made incriminating statements; (7) whether the accused attempted to flee; (8) whether he made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt.

*Ibarra*, 479 S.W.3d at 488 (citing *Evans*, 202 S.W.3d at 162 n.12). These factors are non-exhaustive and none are to be mechanically considered in isolation. *See*

8

*Evans*, 202 S.W.3d at 164–66. While they can help guide a court's analysis, "ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318–19).

Considering the factors listed above, and the totality of the circumstances previously recounted, we find in the record evidence that shows: (1) that Appellant was present when the search was executed, (2) that he was in close proximity to and had access to the methamphetamine, (3) that the place in which the drugs were found was enclosed, (4) that other contraband or drug paraphernalia[2] was present and in plain view, (5) that he admitted that the four unused meth pipes were his (though he characterized them as ornaments), (6) that he had the keys to and operated the car, (7) that he had the right to possess the vehicle in which the drugs were discovered, and (8) that his phone contained a photograph depicting what appeared to be Appellant's penis on top of a large pile of cash. Moreover, Sims told the arresting officers that the "dope kit" in her purse, which contained methamphetamine and a used pipe, was hers, but that the other used pipe discovered on top of the rest of the contents of her purse and the glass jar containing the baggies of methamphetamine, which were *not* contained within her "dope kit," belonged to Appellant and were given to her for purposes of concealment.

The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. CRIM. PROC. art. 36.13

---

[2]In this case, the evidence suggests that the four unused meth pipes, the can of butane, and the clear plastic tubing found in the driver's-side floorboard were "intended for use . . . to contain, ingest, or inhale a controlled substance." *See Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see also* HEALTH & SAFETY § 481.002(17) (definition of drug paraphernalia), § 481.183 (requiring courts to consider "all . . . logically relevant factors" to discern whether an item is drug paraphernalia).

(West 2007), art. 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witnesses. *Adelman v. State*, 828 S.W.2d 418, 421 (Tx. Crim. App. 1992). The jury was also entitled to draw reasonable inferences from the evidence and resolve any evidentiary conflicts. *Jackson*, 443 U.S. at 319. We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant intentionally or knowingly possessed methamphetamine. Because the evidence is sufficient to show that Appellant possessed the methamphetamine found in Sims's purse, we overrule Appellant's first issue in each appeal.

> *II. Issue two – The trial court did not abuse its discretion by denying Appellant's motion for a mistrial; the trial court promptly instructed the jury to disregard the objectionable question.*

### A. *Standard of Review*

A mistrial is only appropriate "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Indeed, a trial court may only exercise its discretion and grant a party's motion for a mistrial "if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error." *Id.* The decision to deny a motion for a mistrial "rests within the sound discretion of the trial court" and will only be disturbed if the trial court abused its discretion. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993).

Merely asking an improper question, without more, will rarely warrant a mistrial. *Hernandez v. State*, 805 S.W.2d 409, 413 (Tex. Crim. App. 1990). Furthermore, "any harm from such a question may be cured by an instruction to disregard the question." *Id.* at 414. Indeed, the curative effect of an instruction to

the jury will suffice "except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Gonzales v. State*, 685 S.W.2d 47, 49 (Tex. Crim. App. 1985); *Clark v. State*, 500 S.W.2d 469, 470 (Tex. Crim. App. 1973) *accord Hernandez*, 805 S.W.2d at 414; *Huffman v. State*, 746 S.W.2d 212, 218 (Tex. Crim. App. 1988). In order to determine whether we are dealing with one of the rarely encountered "extreme cases," the crucial question is "whether the jury was so affected by the question that they were unable to disregard it in their deliberations as instructed." *Huffman*, 746 S.W.2d at 218. The answer to this question will depend upon an examination of the peculiar facts and circumstances of the case. *Hernandez*, 805 S.W.2d at 414.

B. *Analysis*

Appellant did not testify and his trial counsel only called a single defense witness at trial: Patrick Tharp. Appellant managed to use Tharp's testimony to argue the plausibility that the tubing found in the bag in the driver's-side floorboard was related to Appellant's livelihood as a tree cutter and lawn mower, rather than for use as smoking paraphernalia. This was ostensibly Appellant's sole purpose in calling Tharp as a witness, as no other matters were inquired of during his direct examination. Five questions into its cross-examination, the State asked: "[D]o you currently have felony charges pending?" Appellant immediately objected. The trial court sustained the objection and instructed the jury to disregard the question, but it denied Appellant's motion for a mistrial.

To warrant a reversal for the trial court's refusal to grant Appellant's request for a mistrial, it must "appear[] that the question . . . [wa]s clearly calculated to inflame the minds of the jury," and "the question must [have] be[en] obviously harmful to the defendant." *Gonzales*, 685 S.W.2d at 49. With respect to the first question, it is difficult to see any proper purpose the State had for asking the

question. As a general rule, "the fact that a witness, an accused or otherwise, has been charged with an offense is inadmissible for the purpose of impeaching him as to his credibility unless the charge has resulted in a final conviction for a felony or an offense involving moral turpitude." *Alexander v. State*, 740 S.W.2d 749, 763 (Tex. Crim. App. 1987).

There is an exception to the rule against asking about pending charges, however, when the proffering party makes "a showing that such evidence tends to establish prejudice, interest, bias[,] or motive of the witness in testifying as he has." *Id.* This exception is usually afforded to criminal defendants in particular. *See, e.g.*, *Simmons v. State*, 548 S.W.2d 386, 388 (Tex. Crim. App. 1977) ("[G]reat latitude is allowed the accused in showing any fact, including pending charges, which would tend to establish ill feeling, bias, motive, and animus on the part of any witness testifying against him."). However, it has also been afforded to the State in some instances. *See, e.g.*, *Massengale v. State*, 653 S.W.2d 20, 23 (Tex. Crim. App. 1983) (holding that, where the defense witness had been charged with threatening State's witnesses in the very same trial, State was permitted to impeach the witness about the charge to demonstrate her "bias, prejudice, and interest in testifying for appellant").

The exception to the general rule prohibiting the questioning of a witness about pending charges is limited. Evidence of pending charges is only admissible if the charges are "relevant to a material issue in the case and the probative value of the evidence outweighs its inflammatory or prejudicial potential." *Alexander*, 740 S.W.2d at 763 n.6. Whether Tharp had pending felony charges of some kind was not relevant to a material issue in Appellant's case, so its potential prejudicial effect outweighed any probative value it might have had. However, the State asserted in its brief that it sought to impeach Tharp with evidence of his own pending charge for felony possession in order to demonstrate that Tharp had an ulterior motive to

12

testify other than to simply offer a neutral opinion as a "quasi-expert on types of tubing." The prosecutor may have believed Tharp's pending charges were relevant under the circumstances. The trial court disagreed, and it was well within its discretion to do so. However, we cannot say that the State's purpose in asking the question was indisputably calculated to inflame the jury and prejudice Appellant.

Finally, regardless of whether the question was calculated to inflame the jury, under these facts, we cannot conclude that the State's question in this case was "obviously harmful" to Appellant. During its subsequent cross-examination, after the trial court sustained Appellant's objection and instructed the jury to disregard the improper question, the State inquired as to whether the tubing could also be contraband:

> Q: Can that tubing also be used for the consumption of meth?
>
> A: No, sir, not that -- not that tubing, no.
>
> Q: Why not?
>
> A: Because it puts off a harsh, toxic taste through the hose.
>
> Q: Okay. And how do you know that?
>
> A: Well, I'm a mechanic. We have to know those kinds of things. . . .
>
> Q: It can't be used to make a smoking device?
>
> A: No, sir.
>
> Q: It can't because it tastes bad?
>
> A: I don't think anybody would ever want to taste that.
>
> Q: And it can't because it's not flexible?
>
> A: It's -- it's flexible, yes, but there's no elasticity in it . . .
>
> Q: Why would you need an elastic tube to make a meth smoking device?
>
> A: That's -- I have -- I have no clue, sir.

13

Q: You have no clue?

A: I'm just saying that -- that is a fuel line.

A jury observing this cross-examination might be justified in inferring that Tharp had some firsthand experience with the foul taste produced from smoking with the tubing in question. If the jury had reached such a conclusion, it could have impeached Tharp's character to some degree, but it could also have lent credence to his testimony regarding the unsuitability of the tubing for use as paraphernalia. Further, the jury may have reasonably concluded that Tharpe was not personally familiar with the taste but, rather, reached his conclusion deductively from specialized knowledge as a mechanic.

In any case, Appellant's argument as to how or why the State's improper question should be construed as "obviously harmful" to Appellant is not clear. The trial court instructed the jury to disregard the State's improper question, and a jury is presumed to obey a trial court's instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Such presumption is rebuttable, "but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instruction." *Id.* Appellant here has pointed to no evidence to rebut the presumption in this case, and we are unpersuaded that the prosecutor's improper question resulted in any incurable impression on the jury.

Even had the jury failed to disregard the question as instructed, we cannot conclude that the result would be "obviously harmful" to Appellant. Tharp did not answer the question. The State gave no indication of the kind of felony that it was suggesting when it asked whether Tharp had charges pending. The possibility that Tharp had been charged with *something* in no way contradicts his technical claim about the use of the tubing in question or his claim that smoking from such tubing would taste bad.

14

In short, we conclude that the State's question was not so inflammatory that it could not be cured by an instruction from the trial court to disregard it, which the trial court did in this case. We hold that the trial court did not abuse its discretion in denying Appellant's motion for mistrial. We overrule Appellant's second issue in each appeal.

*III. Issue Three – The police's evidentiary chain of custody was sufficiently demonstrated.*

A. *Standard of Review*

Appellate courts review a trial court's decision regarding the admissibility of evidence for abuse of discretion. *de la Luz Torres v. State*, 570 S.W.3d 874, 878 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Indeed, "[a] trial judge has great discretion in the admission of evidence at trial." *Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007). When reviewing a trial court's decision to admit evidence over an attack on the chain of custody in particular, we bear in mind that "[p]roof of the beginning and end of the chain will support admission of the narcotics into evidence barring any showing of tampering or alteration." *Mello v. State*, 806 S.W.2d 875, 878 (Tex. App.—Eastland 1991, pet. ref'd). Hence, so long as the State accounts for the beginning and end of the chain of custody, and absent evidence of actual tampering, infirmities in a chain of custody do not affect the admissibility of the evidence but, rather, affect only "the weight that the fact-finder should give the evidence, which may be brought out and argued by the parties." *Druery*, 225 S.W.3d at 504–05.

B. *Analysis*

Appellant does not dispute that an infirmity in the chain of custody only goes to the weight of the evidence rather than its admissibility, so long as the beginning and end are accounted for and there is no evidence of actual tampering. Nor, for that matter, does Appellant challenge that the State did account for the beginning and

end of the chain of custody. Indeed, the State did adequately prove the beginning and end of the chain of custody in this case. Investigator Gover testified that he personally took possession of all of the items of physical evidence seized from the vehicle that Appellant was driving. Thus, the beginning of the chain of custody is accounted for here. The State further established, through Investigator Gover's testimony, that he personally retrieved those same items of evidence from his own evidence locker, to which he has the only key, and delivered them to court for Appellant's trial. As such, the end of the chain of custody has also been adequately established. Thus, absent actual evidence of tampering, the bar for admissibility has been satisfied here.

Appellant concedes that "there was no specific evidence that anyone had tampered with the evidence at issue." Rather, the entirety of Appellant's argument is that Investigator Gover "simply placed the methamphetamine and other evidence seized from the vehicle on an open, accessible table in the evidence room," at least for a period of time, and that such "handling of the evidence raises serious concerns of tampering, serious enough to require exclusion of the evidence." This is a novel argument without precedent in Texas law. We decline to adopt such a rule here. Therefore, any concern regarding accessibility of the methamphetamine in the evidence room goes to the weight of that evidence, not its admissibility.

The fact that, for a single evening, the evidence was left on a table in the evidence room, and not within Investigator Gover's own personal evidence locker within that larger evidence room, goes to the weight and credibility of the physical evidence admitted. Indeed, Appellant's trial counsel spent ample time attacking the midsection of the chain of custody for this reason. The jury was entitled to place as much, or as little, weight on this physical evidence as it saw fit. Hence, the trial court did not abuse its discretion in admitting the State's proffer of

methamphetamine and other evidence seized from the vehicle Appellant was driving when the police stopped him. We overrule Appellant's third issue in each appeal.

*This Court's Ruling*

We affirm the judgment of the trial court in each cause.


W. BRUCE WILLIAMS

JUSTICE


September 30, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.